# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## GREENBELT DIVISION

_____

|  |  |  |
|---|---|---|
| THE TOWN OF MOUNTAIN LAKE PARK, MARYLAND | ) ) ) | |
| Plaintiff, | ) ) | Docket No.:   8:19-cv-03415 |
| v. | ) ) | |
| 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); BUCKEYE FIRE EQUIPMENT CO.; CHEMGUARD, INC.; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; ANSUL COMPANY; UNITED TECHNOLOGIES CORPORATION; KIDDE PLC, INC. (f/k/a Williams Holdings, Inc. and/or Williams US, Inc.); KIDDE FIRE FIGHTING, INC. (f/k/a National Foam, Inc., National Foam System, Inc. and/or Chubb National Foam Inc.); ANGUS FIRE ARMOUR CORP., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, the Town of Mountain Lake Park, Maryland ("Plaintiff" or the "Town"), brings this action against 3M Company, Buckeye Fire Equipment Company, Chemguard, Inc., National Foam, Inc., Tyco Fire Products LP (successor-in-interest to Ansul Company), Ansul Company, United Technologies Corporation, Kidde PLC, Inc., Kidde Fire Fighting, Inc., Angus Fire Armour Corp., . and John Doe Defendants 1-49 (collectively, "Defendants") and alleges as follows, upon information and belief and investigation of Counsel:

# I.    SUMMARY OF THE CASE

1.     The Town is a local governmental body, corporate and politic, formed under the laws of the State of Maryland to provide certain utility services in and around Garrett County, Maryland, including but not limited to potable water service within the Town and certain defined areas within the unincorporated portions of the County.

2.     Plaintiff operates wells distributed throughout its service area, all of which pump groundwater to supply drinking water to customers throughout the Town of Mountain Lake Park and certain areas within Garrett County.

3.     Upon information and belief, Plaintiff's wells are contaminated with two highly toxic chemicals—perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS"). PFOA and PFOS are manufactured compounds that have been long used as a component of aqueous film-forming foam ("AFFF"), which is used to control and extinguish aviation, marine, fuel, and other shallow spill fires.

4.     Both PFOA and PFOS are highly soluble in water, not easily biodegradable, and persistent in the environment. Both are known animal carcinogens and likely human carcinogens. The United States Environmental Protection Agency ("EPA") has stated that "human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy-induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is suggestive evidence of carcinogenic potential for PFOS."[1]

---

[1] See "Health Effects Support Document for Perfluorooctanoic Acid (PFOA)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos; "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental

5.      Upon information and belief, airports within the surrounding areas and connected to the same water supply by means of ground travel have all used PFOS/PFOA-containing AFFF in fire training activities at their respective facilities. During these activities, AFFF was used as directed by the manufacturer, which allowed PFOA and PFOS to enter into the environment. When sprayed onto outdoor surfaces as intended, the compounds migrated through the soil and into the groundwater, thereby contaminating the underground aquifer and water pumped into Plaintiff's drinking water supply wells. In addition, the Town of Mountain Lake Park is located between the banks of the Casselman River and Big Shade Run. Upon information and belief, these rivers are one vehicle for the PFOA and PFOS contamination that is derivative of Defendants' AFFF products.

6.      Plaintiff now seeks to recover the costs of restoring its contaminated drinking water systems and supply wells that have been, and continue to be, contaminated by PFOA and PFOS.

## II.      **<u>PARTIES</u>**

7.      Plaintiff, the Town of Mountain Lake Park, is an incorporated town, existing under the laws of the State of Maryland and located in Garrett County, Maryland. Plaintiff supplies water to hundreds of customers throughout the Town of Mountain Lake Park and areas of Garrett County. Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes to the public as well as in its wells, piping, distribution system, and facilities

8.      Defendant 3M Company f/k/a Minnesota Mining and Manufacturing Company ("3M"), is a foreign corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 3M Center, St. Paul, Minnesota 55144. At all times relevant,

---

Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country. Upon information and belief, Defendant 3M developed, designed, manufactured, marketed, sold and distributed AFFF containing PFOA and PFOS from approximately 1976 through the present.

9.     Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the state of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. At all times relevant, this Defendant manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country. Upon information and belief, Buckeye developed, designed, manufactured, marketed, sold, and distributed AFFF containing PFOA and/or PFOS commencing in approximately 2003 through the present.

10.     Defendant Chemguard, Inc. ("Chemguard") is a foreign corporation organized and existing under the laws of the state of Wisconsin, with its principle place of business at One Stanton Street, Marinette, Wisconsin 54143. At all times relevant, this Defendant manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country. Upon information and belief, Chemguard developed, designed, manufactured, marketed, sold, and distributed AFFF containing PFOA and/or PFOS from approximately 1997 through the present.

11.     Defendant National Foam, Inc., ("National Foam") is a Pennsylvania corporation, with its principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382. At all times relevant, this Defendant manufactured, marketed, promoted, distributed, and/or sold

AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

12.     Tyco Fire Products LP, successor-in-interest to Ansul Co., is a limited partnership organized and existing under the laws of the State of Delaware, with its headquarters located at 1400 Pennbrook Parkway, Landsdale, Pennsylvania 19446. The Ansul company is a foreign corporation organized and existing under the laws of the state of Wisconsin, with its principal place of business at One Stanton Street, Marienette, Wisconsin 54143. Tyco manufactures the Ansul brand of products and is the successor- in-interest to the corporation formerly known as The Ansul Company (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul"). At all times relevant, Tyco/Ansul manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country. Upon information and belief, Tyco/Ansul developed, designed, manufactured, marketed, sold and distributed AFFF containing PFOA and/or PFOS commencing in 1976.

13.     United Technologies Corporation ("United Technologies"), is a foreign corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032. At all relevant times, this Defendant manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country. Upon information and belief, United Technologies developed, designed, manufactured, marketed, sold and distributed AFF containing PFOA and/or PFOS from approximately 2003 to 2013.

14.     Kidde PLC, Inc., ("Kidde") is a foreign corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at One Carrier Place,

Farmington, Connecticut 06034. Upon information and belief, Kidde was formerly known as Williams Holdings, Inc. and/or Williams US, Inc. At all relevant times, this Defendant manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country. Upon information and belief, Kidde developed, designed, manufactured, marketed, sold, and distributed AFFF containing PFOA and/or PFOS from approximately 2000 through 2013.

15.     Kidde Fire Fighting, Inc. ("Kidde Fire Fighting") is a foreign corporation organized and existing under the laws of the state of Pennsylvania, with its principal place of business at 400 Main Street, Ashland, Massachusetts 01721. Upon information and belief, Kidde Fire Fighting was formerly known as National Foam, Inc., National Foam System, Inc. and/or Chubb National Foam, Inc. At all relevant times, this Defendant manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country. Upon information and belief, Kidde Fire Fighting developed, designed, manufactured, marketed, sold, and distributed AFFF containing PFOA and/or PFOS from approximately 1991 through the present.

16.     Angus Fire Armour Corp. ("Angus Fire") is a foreign corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 141 Junny Road, Angier, North Carolina 27501. At all relevant times, this Defendant manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country. Upon information and belief, Angus Fire developed, designed, marketed, sold and distributed AFFF containing PFOA and/or PFOS from approximately 1993 through the present.

17.     Any and all references to a Defendant or Defendants in this Complaint include any

predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

18.     When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.     JURISDICTION AND VENUE

19.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) because complete diversity exists between Plaintiff and Defendants. Plaintiff is a citizen of Maryland, but no Defendant is a citizen of Maryland. The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different states.

20.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. section 1391(a) because a substantial part of the property that is the subject of the action is situated in this judicial district.

### IV.     FACTUAL ALLEGATIONS

### THE CONTAMINANTS: PFOA & PFOS

21.     PFOA and PFOS are stable manmade chemicals in a family known as "perfluorinated chemicals" ("PFCs"). A PFC is a chain of carbon atoms surrounded by fluorine atoms. PFOA and PFOS are PFCs with eight carbon atoms. For this reason, they are sometimes referred to as "C8."

22.     PFOA and PFOS are highly water soluble, persistent in the environment and

resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column.

23.  PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[2]

24.  PFOA and PFOS are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

25.  Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS.

26.  According to the EPA, "…studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[4]

27.  EPA has also warned that "there is suggestive evidence of carcinogenic potential for PFOS."[5]

---

[2] See Agency for Toxic Substances and Disease Registry, Per- and Polyfluoroalkyl Substances and Your Health, available at https://www.atsdr.cdc.gov/pfc/health_effects_pfcs.html.
[3] 3 See EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55; Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 ( May 2016) at 55, both available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[4] See "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[5] See "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

28.     EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example…an airfield at which [PFOA/PFOS] were used for firefighting."[6]

29.     EPA has issued Health Advisory Values for PFOA and PFOS found in drinking water of 70 parts per trillion ("ppt"). When both PFOA and PFOS are found in drinking water, the combined concentrations should not exceed 70 ppt.

## THE PRODUCT: AQUEOUS FILM-FORMING FOAM

30.     Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

31.     The AFFF made by Defendants contained either or both PFOA and PFOS.

32.     AFFF produced, marketed and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates chemicals made through telomerization degrade into PFOA, but not PFOS.

33.     AFFF can be made without PFOA and PFOS. Fluorine-free foams do not release dangerous PFOA and/or PFOS into the environment.

34.     AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF works by coating the ignited fuel source, preventing its contact with oxygen and suppressing combustion. AFFF is typically sprayed directly onto a fire.

---

[6] See "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

35.    When used as the Defendants intended and directed, AFFF releases PFOA and/or PFOS into the environment.

36.    Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

37.    Upon information and belief, airports in and around the area of Mountain Lake Park have all used PFOS/PFOA-containing AFFF in fire training activities at their respective facilities. During these activities, AFFF was used as directed by the manufacturer, which allowed PFOA and PFOS to enter into the environment.

## DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS

38.    Upon information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

39.    Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

40.    In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to

1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[7]

41.     By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

42.     In 1981, DuPont tested for and found PFOS in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

43.     Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

44.     Based on information and belief, in 2000, under pressure by the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

45.     Defendants also knew or should have known that: (a) users of AFFF would likely include fire and rescue training organizations and their personnel; (b) fire and rescue personnel were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to the environment and

---

[7] See Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[8] See Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[9] See Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

human health if allowed to runoff or drain into groundwater; (d) fire and rescue personnel in and around Mountain Lake Park, Maryland foreseeably lacked knowledge of these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or affirmative instructions in the use of AFFF.

46.     Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or supplied PFOA/PFOS, (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil), thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around Plaintiff's wells; (3) failed to recall and/or warn the users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of groundwater contamination as a result of standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

47.     As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's wells have been contaminated and will continue to be contaminated with PFOA and PFOS, creating a public health hazard, unless such contamination is remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination in its wells at significant expense, loss and damage.

48.     Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products. They also had a duty and breached their duty to minimize the environmental harm caused by PFOA and PFOS.

**THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S WELLS**

49.     The invasion of Plaintiff's wells with PFOA and PFOS is recurring—new contamination flows regularly and constantly into the wells each day, resulting in new harm to the property on each occasion.

50.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the limited subterranean supplies of fresh drinking water on which Plaintiff's wells depend. Plaintiff's interests in protecting the quality of its citizens' limited drinking water supplies constitutes a reason for seeking damages sufficient to restore such drinking water supplies to their pre-contamination condition.

## **FIRST CAUSE OF ACTION**
### STRICT LIABILITY – DESIGN DEFECT AND/OR DEFECTIVE PRODUCT

51.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

52.     Defendants designed, manufactured, formulated, packaged, distributed, promoted, marketed, and/or sold products containing PFOA/PFOS contaminants.

53.     Defendants represented, asserted, claimed and warranted that AFFF products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

54.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers and marketers of PFOA/PFOS contaminants, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

55.     The PFOA/PFOS contaminants purchased and used in the vicinity of Plaintiff's wells were used in a reasonably foreseeable manner and without substantial change in the condition of such products.

56.     Defendants knew, or should have known, that use of AFFF in its intended manner

would result in the spillage, discharge, disposal or release of PFOA and/or PFOS into or onto land and water, including drinking water supplies.

57.     The PFOA/PFOS-containing products used in the vicinity of Plaintiff's wells were defective in design and unreasonably dangerous because, among other things: (a) PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner; (b) even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

58.     PFOA and/or PFOS pose significant threats to public health; and, (d) PFOA and/or PFOS create real and potential environmental damage.

## SECOND CAUSE OF ACTION
STRICT LIABILITY – FAILURE TO WARN

59.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

60.     As manufacturers, distributors, suppliers, sellers and marketers of PFOA/PFOS contaminants, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOA and/or PFOS.

61.     Defendants knew that PFOA/PFOS contaminants would be purchased transported, stored, handled, and used without notice of the hazards which PFOA/PFOS pose to groundwater and wells.

62.     Defendants breached their duty to warn by unreasonably failing to provide warnings about potential and/or actual contamination of water resources by PFOA and/or PFOS to Plaintiff, public officials, Downstream Handlers, water providers, and/or the general public, despite the fact that Defendants knew that these contaminants were in the drinking water.

63.     The PFOA/PFOS contaminants purchased or otherwise acquired from Defendants were used, discharged, and/or disposed of in or otherwise released into or onto lands in the vicinity

of Plaintiff's wells. The PFOA/PFOS contaminants were used in a reasonably foreseeable manner and without substantial change in the condition of the products.

64.    The PFOA/PFOS contaminants used in the vicinity of Plaintiff's wells were defective in design and unreasonably dangerous products for the reasons set forth above.

65.    Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of PFOA/PFOS contaminants in the vicinity of subterranean drinking water supplies, including contamination of public drinking water supplies with PFOA and/or PFOS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate those hazards.

66.    In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PFOA/PFOS contaminants or otherwise.

67.    As a direct and proximate result of Defendants' above-described failure to give warnings, PFOA and PFOS at all times relevant to this litigation have:

   a.  posed and continue to pose a threat to groundwater and Plaintiff's wells;

   b.  required and/or will require additional testing and monitoring of the groundwater and production wells for PFOA and/or PFOS contamination; contaminated, continue to contaminate, and/or will contaminate groundwater in the vicinity of Plaintiff's wells;

   c.  will require remediation of PFOA/PFOS groundwater contamination or, where remediation is impracticable, installation of a system to filter out PFOA/PFOS or procurement of water from alternative sources.

### THIRD CAUSE OF ACTION
PUBLIC NUISANCE

68.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

69.     Defendants have manufactured, distributed, marketed and/or promoted their products in a manner that created or participated in creating a public nuisance that unreasonably endangers or injures the property, health, safety and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

70.     Defendants' acts and omissions offend, significantly and unreasonably interfere with, and cause damage to the public rights common to all, such as the public health, public safety, public peace, and the public comfort.  Defendants had control over their conduct in the Town and that conduct has had an adverse effect on the public right.  The public nuisance caused by Defendants has significantly harmed the Town and a considerable number of Town residents.

71.     Defendants' conduct is unreasonable. Defendants' conduct was not insubstantial or fleeting. Defendants have caused injuries and disruption of public peace, health, and safety; the conduct is ongoing, and it is producing permanent and long-lasting damage.

72.     Defendants, by their negligent, reckless and willful acts and omissions set forth above have, among other things, knowingly unleashed massive, long- lasting and still spreading contamination of groundwater and drinking water wells, thereby causing PFOA and/or PFOS contamination of groundwater and contamination and threat of contamination of Plaintiff's wells.

73.     Actual and threatened PFOA and/or PFOS contamination caused by Defendants' conduct has caused and continues to cause injury to Plaintiff in the form of present serious interference with the use, benefit and/or enjoyment of its property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

74.     Defendants' conduct has also injured and continues to injure the property, health, safety, and/or comfort of a considerable number of persons, including a considerable number of

persons in and around Mountain Lake Park, Maryland.

75.     PFOA and PFOS contamination, both real and immediate, constitute current as well as prospective public nuisances.

76.     Defendants knew or in the exercise of reasonable care should have known that the use and introduction of PFOA and/or PFOS into the environment would and has unreasonably and seriously endangered, injured and interfered with the ordinary comfort, use and enjoyment of vital groundwater resources relied upon by Plaintiff.

## FOURTH CAUSE OF ACTION
### PRIVATE NUISANCE

77.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

78.     The groundwater system, including the zone of influence in the groundwater that supplies Plaintiff's wells, has been contaminated by PFOA and/or PFOS as a direct and proximate result of the intentional and unreasonable, negligent and reckless conduct of Defendants.

79.     PFOA and/or PFOS contamination caused by Defendants' conduct has damaged Plaintiff's property and business and unreasonably interfered with the use, benefit and enjoyment of Plaintiff's property.

## FIFTH CAUSE OF ACTION
### TRESPASS

80.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

81.     Plaintiff is the owner and/or actual possessor of property, easements, wells, the right to appropriate and use groundwater, and water rights. Defendants, their agents and employees, knew, or in the exercise of reasonable care should have known, that PFOA and/or PFOS are extremely hazardous to groundwater and public water systems, including the property and other rights of Plaintiff.

82.     Defendants so negligently, recklessly and/or intentionally failed to properly control, apply, use and/or dispose of PFOA/PFOS contaminants, such that they proximately caused and continue to cause PFOA and/or PFOS to contaminate Plaintiff's water system and the groundwater system and zone of influence of the area that supplies Plaintiff's wells.

83.     The contamination of Plaintiff's wells has varied over time and has not yet ceased. PFOA and/or PFOS continue to migrate into and enter Plaintiff's wells. The contamination is reasonably abatable.

84.     Plaintiff has not consented to, and does not consent to, this contamination.

85.     Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass.

86.     As a direct and proximate result of the trespass, Plaintiff has been damaged and is entitled to injunctive relief to abate the trespass and other damages including, but not limited to, diminution in property value, loss of use and enjoyment, cost of bringing the property to its original condition, investigation, remediation, treatment, and/or to such other appropriate relief Plaintiff may elect at trial.

### SIXTH CAUSE OF ACTION
NEGLIGENCE

87.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

88.     Under Maryland law, to establish actionable negligence, the Town must show, in addition to the existence of a duty, a breach of that duty, and injury resulting proximately therefrom.  All such elements exist here.

89.     As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers and handlers of PFOA/PFOS contaminants, Defendants owed a duty to Plaintiff as well as to all persons whom Defendants' products might foreseeably harm to exercise due care in the

handling, control, disposal, sale, testing, labeling, use, warning, and instructing for use of PFOA/PFOS contaminants.

90.     Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate water resources, and are possible carcinogens, Defendants negligently:

    a.  designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFOA/PFOS-containing products;

    b.  issued instructions on how AFFF products should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around Plaintiff's wells;

    c.  failed to recall and/or warn the users of AFFF products of the dangers of groundwater contamination as a result of standard use and disposal of this product; and

    d.  failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS regarding the proper use and disposal of products containing this toxic chemical, notwithstanding the fact that Defendants know the identity of the purchasers of the AFFF.

91.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff's wells and the groundwater that supply them have been, and continue to be, contaminated with PFOA and/or PFOS, causing Plaintiff significant injury and damage. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has incurred, is incurring, and will continue to incur damages, including investigation, treatment, remediation and monitoring costs and expenses related to the PFOA and/or PFOS contamination of its wells.

## SEVENTH CAUSE OF ACTION
### GROSS NEGLIGENCE

92.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

93.     To establish gross negligence, the Town must show that Defendants acted with wanton and reckless disregard for others.  Defendants did so here, and this conduct has poisoned the Town's water supply, representing a threat to health and safety in the Town.

94.     Defendants' conduct as described herein constitutes an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, including the Town, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Defendants have acted wantonly and willfully by inflicting injury intentionally or, alternatively, they have been utterly indifferent to the rights of others, including the Town, that they acted as if such rights did not exist.

95.     Defendants' conduct as described in this complaint demonstrates wanton and willful disregard for others, including the Town, and justifies an award of punitive damages.

96.     These Defendants' breach of the duties described in this complaint directly and proximately resulted in the injuries and damages alleged by the Town.

## EIGHTH CAUSE OF ACTION
### CIVIL CONSPIRACY

97.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs.

98.     At all times relevant to this lawsuit, Defendants actually knew of the hazards which PFOA and PFOS posed to groundwater throughout Maryland, including Plaintiff's water system.

99.     Beginning in the 1960's and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiff. Each Defendant performed at least one overt act in furtherance of this conspiracy.

Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products to the public and to government agencies, with the true, unlawful purpose of:

    a.  intentionally misrepresenting to the EPA and the public that AFFF products were safe and did not pose a risk to groundwater;

    b.  concealing the dangers of AFFF products (including AFFF products' characteristics and the propensity of AFFF products to contaminate groundwater) from the government and the public by, among other means, repeatedly misrepresenting how PFOA/PFOS containing materials were being disposed;

    c.  concealing dangers of AFFF products from consumers and the public; and

    d.  using their considerable resources to fight PFOA and PFOS legislation.

100.  As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have

    a.  posed and continue to pose a threat to groundwater and Plaintiff's production wells;

    b.  contaminated and/or will contaminate Plaintiff's wells and/or groundwater in the vicinity of Plaintiff's property;

    c.  required and/or will require testing and monitoring of Plaintiff's wells for PFOA and PFOS contamination;

    d.  required or will require remediation of PFOA and PFOS groundwater contamination or, where remediation is impracticable or insufficient for Plaintiff, installation of a system to filter out PFOA and/or PFOS or procurement of water from alternative sources;

    e.  diminished Plaintiff's and consumers' confidence in, and the use and enjoyment of, Plaintiff's water and property;

    f.   diminished Plaintiff's property value due to actual, impending, or threatened contamination; and

    g.  caused and/or will cause Plaintiff to sustain substantially increased expenses, loss of the use of water and a threat to its appropriative water rights, all to Plaintiff's damage in an amount within the jurisdiction of this court.

## V.    PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to:

    a.   costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA/PFOS contamination in Plaintiff's drinking water supplies, wells, system, and facilities;

    b.  costs and expenses related to past, present, and future treatment and remediation of PFOA and/or PFOS contamination of its water supplies, wells, system, and facilities or, in the alternative, costs and expenses related to replacement of those wells and facilities.

    c.   costs and expenses related to past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA and/or PFOS in Plaintiff's water supplies, wells, system, and facilities.

2.    Punitive damages;

3.    Consequential damages;

4.    Pre-judgment and post-judgment interest;

5.    Any other and further relief as the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial.

Date: November 26, 2019

Respectfully submitted,

*/s/ Jonathan P. Novak*
Jonathan P. Novak
Maryland Bar No. 20282
jnovak@fnlawfirm.com
Matthew R. McCarley [Pending Pro Hac Vice]
Texas Bar No. 24041426
mccarley@fnlawfirm.com
Gale D. Pearson [Pending Pro Hac Vice]
MN State Bar No. 244673
gpearson@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Rd
Dallas, TX 75231
Tel. (214) 890-0711
Fax (214) 890-0712

John J. Kane Jr.
Maryland Bar Number 27707
jkane@thekanelawgroup.com
**THE KANE LAW GROUP, LLC**
4 Office Street
Bel Air, MD 21014

Matthew S. Daniel (*Pro Hac Vice* pending)
Texas Bar No. 24047575
mdaniel@lawyerworks.com

**FERRER POIROT & WANSBROUGH**
2603 Oak Lawn Ave. Ste. 300
Dallas, Texas 75219
Tel. (214) 521-4412
Fax (866) 513-0115

**Attorneys for the Plaintiff**